VICKSBURG, SHREVEPORT AND TEXAS RAILROAD COMPANY *v.* THE PARISH OF OUACHITA.

Parol evidence which does not contradict anything in the written proceedings of a corporation is admissible to explain omissions in its proceedings.

Giving full weight to the ordinance of the Police Jury of the parish of Ouachita, of June 27, 1853, as an ordinance legally adopted, its adoption cannot be considered as constituting *per se* a subscription to the capital stock of plaintiff.

C. C. 1794, 1799.

The Act of 12th of March, 1852, which authorizes Police Juries to subscribe to works of internal improvement, while it required the Police Jury subscribing, to insert in the ordinance the number and amount of shares proposed to be subscribed, and the provision by taxation for the payment of the subscription, does not inhibit the insertion of such other clauses and conditions as the Police Jury may think expedient. The ordinance as adopted by the jury, is its proposition to contract, and the corporation to whom this proposition is made must accept it according to its terms and conditions, or else there is no contract.

The Act relative to Police Juries approved 9th of April, 1847, provided that " vote of all the members elect of Police Juries shall be required to levy any parish tax or to make any appropriation." There is nothing in the Act of the 12th of March, 1852, which is inconsistent with that of 1847, in this particular.

APPEAL from the District Court of the parish of Ouachita, *Richardson, J.. McGuire & Ray*, for plaintiffs and appellants. *Ludeling & Garrett*, for defendant.

BUCHANAN, J. The plaintiffs set forth in their petition, filed April 11th, 1856, that the parish of Ouachita, through its Police Jury, passed an ordinance for the subscription, by said parish, of six thousand shares, or one hundred and fifty thousand dollars, to the capital stock of the Vicksburg, Shreveport and Texas Railroad Company, payable in ten annual instalments, from March

82

1854 to March 1863, inclusive, of $15,000 each ; that all the forms of law have been fulfilled to make the said subscription perfect, and to constitute it a valid and binding contract on the part of the parish, which the plaintiffs are entitled to enforce; and in virtue of which, the defendants are now the debtor of the plaintiffs in the sum of forty-five thousand dollars, for three of the instalments above mentioned, of the price of six thousand shares of stock, according to the terms of the ordinance of the Police Jury.   The prayer of the petition is, that " petitioner have judgment, decreeing that said subscription of six thousand shares to the capital stock of plaintiffs, made by said Police Jury, is legal, regular and binding on said parish and Police Jury; and further, that said Police Jury, by its President, be required and ordered to enter said stock subscription on the stock books of said corporation, according to law, and the ordinances aforesaid, and the requirements of plaintiffs' charter. And further, that inasmuch as in the original ordinances of said Police Jury subscribing said stock, said Police Jury provided for the payment of said stock, by a levy of eighteen and three-quarters per cent. tax on the landed property of said parish of Ouachita, one-tenth or one seven-eighth per cent. thereof, was payable annually for ten years, making fifteen thousand dollars payable annually, commencing on the 1st of March, 1854, leaving due petitioners of said stock, forty-five thousand dollars on the 1st of March, 1856, with five per cent. per annum interest," &c. prays for judgment for said amount, and that the parish Tax Collector be commanded to collect the same, according to the assessment of landed estate by the tax rolls of 1853, 1854 and 1855.

Defendants except that no cause of action is shown against the parish; and in case the exception was overruled, plead :

1st. The general issue.

2d. The unconstitutionality of the Act of 12th March, 1852, which authorized the subscription by parishes and municipal corporations, to the stock of corporations undertaking works of internal improvement.

3d. That the parish ordinances of the 27th of June, 1853, relied upon by plaintiffs, were illegal, null and void, and plaintiffs have acquired no rights under said ordinances.

4th. That the formalities to be observed, according to the law of March 12th, 1852, for the regularity of the proceedings to carry into effect the said parish ordinances, were not observed, in various particulars, detailed in the answer.

5th. That said ordinances were not approved and ratified by a majority of the voters on whose property the tax was proposed to be levied, as required by the Act of 1852.

6th. That the President of the Police Jury gave notice to plaintiffs, that the parish ordinances of the 27th June, 1853, had not been ratified and approved by a majority of said voters.

7th. That the ordinance authorizing the subscription and imposing a tax to pay the same, has been suspended by an ordinance passed in Januray, 1854, which prohibits the President of the Police Jury from subscribing to the plaintiffs' stock in the name of the parish of Ouachita.

8th. That plaintiffs never communicated in writing to the President of the Police Jury, their consent to accept said subscription.

9th. Special denial of the existence of any contract, or of any rights in plaintiffs to claim the amounts set forth in their petition.

In an amended answer, defendants pleaded that the subscription alleged by plaintiffs is invalid and not binding, because five per cent. was not paid, and the parish ordinance contained no provision for its payment at the time when the subscription may be made.

All these grounds of defence, with the exception of the plea of unconstitutionality of the Act of 12th March, 1852, may be treated collectively as the denial of the existence of a perfect contract between those parties, which confers a right of action upon the railroad company against the parish.

The question of unconstitutionality needs not to be considered in this case, as we are of opinion the plaintiffs have failed to establish a sufficient *causa petendi.*

The plaintiff and defendant are both corporations. Their function are defined by law ; and their conditions and modes of action are prescribed and regulated by law. Their agents for the transaction of business, are, in the case of plaintiffs, a board of directors; in the case of defendants, a Police Jury. The subject-matter of the contract which is supposed to have been made between these corporations, is the subscription of the latter to the capital stock of the former. The plaintiffs being a joint stock company, whose purpose is the making of a great work of internal communication and transportation by the united means of the corporators, its charter, which is found at page 188 of the Acts of 1853, contains provisions in relation to the form of contribution to its capital.

Section 4th says : "The said corporation shall go into operation and be organized as soon as shares of capital stock to the amount of two hundred and fifty thousand dollars *shall have been subscribed.*

Section 8th names commissioners to receive *lists of subscription.*

Section 3d. A payment of five per cent. on the amount of each share shall be made *at the time of subscribing.*

Section 9th. In case of failure on the part of any subscriber to pay the instalments on his stock as required, the Board of Directors shall have the option, after thirty days written notice to the defaulter, of forfeiting the stock, and selling it for the benefit of the company, or of compelling, by suit, the payment of such instalments.

The general form, then, of becoming a corporator in this corporation, was *subscription,* or a signing of the name of the corporator upon lists in the hands of commissioners, or (section 16) upon stock-books kept in the office of the company, with the number of shares of such corporator added to his signature. Such was the form adopted by the original contributors to this enterprise, as shown by the preamble to their private act of incorporation, and embodied in their charter by the Legislature.

In the year 1852, by Act approved March 12th, (Session Acts, page 128,) a power was given by the Legislature to Police Juries and Municipal Corporations, of *subscribing* to the stock of corporations undertaking works of internal improvement under the laws of this State, *on complying with the provisions of this Act.*

As the charter of the corporation of plaintiffs herein, defined the manner in which subscriptions to the capital stock of that corporation could be received, so are we to gather from the law of 1852, how subscriptions by Police Juries to that or any other corporation created for purposes of internal improvement are to be given. And first, we are to notice that the Police Jury is to signify

its intention to subscribe to such stock, by an ordinance. Two principal things are required by law to be mentioned in that ordinance—the number and amount of shares to be subscribed, and the levy of a tax on the landed estate of the parish to defray the subscription.

An ordinance was promulgated as having been passed by the Police Jury of Ouachita, on the 27th of June, 1853, of which the first section is in the following words: "Be it ordained by the Police Jury of the parish of Ouachita, that the parish of Ouachita, in the State of Louisiana, subscribe to the stock of the Vicksburg, Shreveport and Texas Railroad Company, shares to the number of six thousand, amounting to one hundred and fifty thousand dollars, and that a tax of one and seven-eighth per cent. be levied on the landed estate," &c.

An objection is made by the defendants, the present Police Jury of the parish of Ouachita, to this ordinance of their predecessors, that it was passed by less than the competent number of members of the Police Jury. The Act relative to Police Juries, approved 9th of April, 1847, section 5, (Session Acts, page 82,) provides as follows: "A vote of a majority of all the members elect of Police Juries, shall be required to levy any parish tax, or to make any appropriation."

The objection is, that out of nine members elect of the Police Jury of Ouachita, only seven were present at the meeting which adopted the ordinance in question, and that the vote stood, four for adopting and three against adopting the ordinance. The evidence of this fact comes up to us, in the shape of an admission appended to a bill of exception, and to be considered only in case we should sustain the exception to the decision of the District Judge, who excluded parol evidence. The minutes of the Police Jury merely stated that the ordinance was adopted, but did not give the yeas and nays. The defendants offered to prove by the Secretary and President of the jury which adopted the ordinance, and by other witnesses, the facts above recited, but the court rejected the testimony, on the ground that parol evidence is inadmissible to contradict the recorded proceedings of the Police Jury, and the Police Jury being a party, cannot contradict its own acts.

We think this testimony was improperly rejected. It does not contradict any thing in the written proceedings of the Police Jury.

There are several precedents for supplying by parol omissions in the minutes of the proceedings of corporations. 1 Ann. 215, *Millaudon* v. *First Municipality* ; 2 Ann. 939, *Prother* v. *Minden Seminary.*

By the admission annexed to the bill of exceptions, it appears that the tax imposed by the ordinance of the 27th of June, 1853, had not the sanction of the majority of members elect of the Police Jury, as required by the Act of 1847. There is nothing in the Act of the 12th of March, 1852, which is inconsistent with that of 1847, in this particular ; and we therefore conclude, the latter statute to be applicable to the present case.

But were this not so, and giving full weight to the ordinance of June 27, 1853, as an ordinance legally adopted, we cannot consider its adoption as constituting *per se* a subscription to the capital stock of the plaintiffs.

The Act of 12th of March, 1852, which authorized such subscriptions, while it required the Police Jury subscribing to insert in the ordinance the number and amount of shares proposed to be subscribed, and the provision by taxation for the payment of the subscription, does not inhibit the insertion of such other clauses and conditions as the Police Jury might think expedient.

Accordingly, after imposing the tax and providing for its collection, the ordinance proceeds as follows:

Section 5. Be it further ordained, that this ordinance shall not take effect, until the Board of Directors of said Railroad Company shall have communicated, in writing, to the President of the Police Jury of said parish, their consent to accept the subscription herein ordained, payable in the manner herein set forth.

Section 7. Be it further ordained, that within ten days after the closing of the polls, as is provided for in the foregoing (6th) section, it shall be the duty of the President of the Police Jury to notify, in writing, the President of the said Railroad Company, whether the ordinances have been approved and ratified by a majority of the voters on whose property the tax is proposed to be levied: provided, that if said ordinances be approved and ratified according to law, that the stock subscription shall be entered on the stock-books of said company, by the President of the Police Jury, so soon as the President and Directors of said company shall signify their assent to said subscription, as is provided for in the foregoing ordinance.

The 6th section directs the President of the Police Jury to order an election to take the sense of the land holders of the parish, as provided by law.

The approval of the tax payers evidenced by a vote, was a *sine qua non* to the validity of the subscription, by the terms of the statute. But this is not the object of our present remarks. We are considering the 5th and the 7th sections, which are all important, in their bearing upon *the existence* of a contract. The ordinance is the proposition to contract, and the terms of that proposition cannot for a moment be left out of sight, in arriving at the intention of the party who proposes.

We find, then, that in the 5th section, the Police Jury require that the Board of Directors of the Railroad Company shall communicate, in writing, to the President of the Police Jury, their consent to accept the subscription, payable in five annual instalments. And there was great reason for requiring the consent of the Board of Directors. For we have seen that the charter of plaintiffs required the payment of five per cent. at the time of subscription. And other sections authorized the Directors to call in the subscriptions as they should think proper, provided the calls did not exceed ten per cent. at one time, nor two calls in a year, and provided ninety days notice of a call was given. Now, here was a proposition to accept a subscription without a cash payment, and payable at the limited rate of ten per cent. per annum. It is evident that these terms of subscription were an essential part of the proposed contract; because the tax imposed to defray the proposed subscription in accordance with the requirements of the statute, could only have effected its object by an acceptance of the subscription upon the terms proposed by the ordinance.

We express no opinion as to the right of the Railroad Company to accept subscriptions on terms different from those prescribed by their charter.

This question, although made by the pleadings and argument, does not require solution at our hands; for there is no proof before us that the plaintiffs, through their Board of Directors, ever gave consent in writing to the terms of defendants proposed subscription. It is true, the Board of Directors, at a session of date the 1st of November, 1853, or more than two months after they had been notified by the President of the Police Jury that the parish ordinance

RAILROAD CO.    of Ouachita, for subscribing to their stock, had not been ratified by the taxa-
v.
OUACHITA.       ble voters, passed a resolution, by which they (the Board of Directors) ac-
cepted the ordinance of the 27th of June, 1853, "as a stock subscription to
said company, according to the terms of the ordinance of the Police Jury."

But it is not proved that this resolution was communicated to the President
of the Police Jury. *Mr. John Ray* was the only witness examined on this
subject, and his evidence, which is before us, is vague and inconclusive upon
this material point of the notification by plaintiffs to defendants of their ac-
ceptance of the proposition to subscribe, contained in the ordinance of the
27th of June, 1853. The 7th section contains internal evidence that this or-
dinance was merely a proposition to subscribe, and not, as plaintiff's counsel
contends, a subscription. See the proviso in that section copied above, which
directs the President of the Police Jury to enter the subscription of the parish
on the books of the company, so soon as the President and Directors of the
company shall signify their assent to the subscription, in the mode provided
for in the ordinance.

In the mean time, the evidence shows us that, on the 18th of August, 1853,
five days after the election held for the purpose of taking the sense of the
taxable voters upon the proposed subscription, the President of the Police
Jury notified the Railroad Company, that the subscription had *not* been rati-
fied and approved in the mode required by law ; and the Police Jury, by or-
dinance of January, 1854, suspended their proposition to subscribe, until the
question of ratification should be again submitted to the people.

From this review of the facts, it is apparent that there has not been that
concurrence of two wills, which constitutes a perfect contract, that can be en-
forced by an action at law. "A contract consisting of a proposition and the
consent to it, the agreement is incomplete until the acceptance of the person
to whom it is proposed. If he who proposes should, before that assent is given,
change his intention on the subject, the concurrence of the two wills is want-
ing, and there is no contract." C. C. 1794.

"The acceptance, to form a contract, must be in all things conformable to
the offer." C. C. 1799.

Judgment affirmed, with cost.